SHAW, Judge.
Joseph Carlile appeals the circuit court’s summary denial of his petition for a writ of habeas corpus, in which he alleged that the Alabama Department of Corrections (“DOC”) had improperly calculated his release date. According to Carlile, he was being illegally held beyond the expiration of his sentence because, he claimed, DOC had not properly calculated the amount of incentive good time (“IGT”) to which he was entitled.
Our examination of the record indicates that in 1978 and 1979 Carlile was convicted of four counts of robbery and one count of escape; he was sentenced to a total of 67 consecutive years in prison.[1] Carlile earned IGT from August 12, 1983, to June 25, 1986, at which time he was removed from IGT status because of a disciplinary proceeding against him. Carlile was paroled on February 6, 1989. On April 16, 2002, Carlile was returned to prison based on allegations that he violated his parole, and on May 6, 2002, Carlile’s parole was revoked and he was ordered to serve the remainder of his sentences for his convictions.
On October 21, 2002, Carlile filed his petition for a writ of habeas corpus alleging that DOC had not properly calculated the amount of IGT he was entitled to and, thus, that his release date had been improperly calculated resulting in his being held in prison beyond the expiration of his sentence. Specifically, Carlile alleged (1) that he was entitled to earn, but was not credited with, two days of IGT credit for every one day that he served while on IGT status from August 12, 1983, to June 25, 1986; (2) that although he had been removed from. IGT status in 1986, he had been reinstated to IGT status in 1987 and was entitled to two days for every one day he earned between 1987 and his parole on February 6, 1989;, and (3) that DOC’s calculation does not reflect the IGT credit he claims he should have earned while he was on parole from 1989 to 2002.
DOC filed a motion to dismiss Carlile’s petition, to which it attached an affidavit from Betty Teague, records director for DOC. Teague’s affidavit stated that Car-lile’s release date was correct, and it included a computation of Carlile’s sentences, which indicated that Carlile’s minimum release date was November 4, 2008. Teague’s calculations indicated that two days of “dead time” were added to Carlile’s minimum release date to account for time he was out of jail when he escaped and that Carlile was given credit for a total of 5 years and 5 months of jail credit and 33 years and 6 months of statutory good time. Her calculations also reflect that Carlile was credited with 2 years, 10 months, and 13 days of IGT for the time between August 12, 1983, and June 25, 1986; Teag-ue, in her affidavit, specifically stated that Carlile “has not been in IGT status *1012 since June 25, 1986, which is the date of his last disciplinary action.” (C. 17.) In addition, Teague attached to her affidavit a copy of Carlile’s inmate summary from December 3, 2002, which contained Car-lile’s various sentence dates, his long and short end-of-sentence dates, the dates he was granted parole and that his parole was revoked, and a summary of the disciplinary punishments that Carlile had received while in prison. Carlile filed two responses to DOC’s motion to dismiss. The circuit court summarily denied Carlile’s petition on April 7, 2003.
Initially, we note that a petition for a writ of habeas corpus is the proper remedy for determining whether the State has properly calculated the time an inmate must serve in prison. See, e.g., Breach v. State, 687 So.2d 1257 (Ala.Crim.App.1996); Swicegood v. State, 646 So.2d 158 (Ala.Crim.App.1993).
I.
As to Carlile’s first claim, as set out above, Carlile contends that because the crimes for which he was convicted occurred in 1978-79, he was entitled to earn IGT under the provisions of §§ 14-9-20 through 14-9-25, Ala.Code 1975. Those sections were repealed by the Alabama Correctional Incentive Time Act, Act No. 80-446, Ala. Acts 1980 (effective May 19, 1980), codified at §§ 14-9-40 through 14-9-44, Ala.Code 1975, but “were retained to the extent that they apply only to prisoners serving time before May 19, 1980, and persons who committed offenses prior to May 19, 1980.” Cox v. State, 628 So.2d 1075, 1075 n. 1 (Ala.Crim.App.1993). See also Warren v. State, 598 So.2d 1058 (Ala. Crim.App.1992); and § 14-9-43, Ala.Code 1975. Because he was entitled to earn IGT under former § 14-9-21, Ala.Code 1975, Carlile maintains he should have been credited with two days for every one day he served, for a total of three days for every day served. According to Carlile, however, he was credited with only one day of IGT for every one day he served, for a total of two days for every day served.
Section 14-9-20, Ala.Code 1975, provided: “[i]n order to encourage prison discipline, commutation of time shall be used as a reward for good behavior at the discretion of the board of corrections.” Section 14-9-21, Ala.Code 1975, provided, in relevant part:
“(a) The board of corrections is hereby empowered to create within the existing classification system a new classification system which would authorize a maximum deduction from the term of the sentence of an exceptional inmate of two days for each one day served.”
In Powers v. State, 546 So.2d 1000 (Ala.Crim.App.1987), this Court addressed a similar issue and interpreted Act No. 182, Ala. Acts 1975, the act that was codified as §§ 14-9-20 through -25, as follows:
“Act 182 authorizes but does not require the Department of Corrections to grant a qualified inmate up to two days good time for every day he serves. ... This interpretation results in a total daily deduction in sentence of three days: two days good time plus the one day actually served.”
546 So.2d at 1003. In Powers, this Court determined that, based on the evidence, it was clear that DOC had consciously made the decision to fix Powers’s IGT credit at one day for every day served rather than the maximum possible rate of two days of IGT credit for every day served, and we affirmed the circuit court’s denial of Powers’s petition. However, in Ex parte Powers, 546 So.2d 1004 (Ala.1988), the Alabama Supreme Court reversed this Court’s judgment and remanded the case for an evidentiary hearing. It said:
*1013 “The Court of Criminal Appeals correctly interpreted Act No. 182, but it is apparent from a reading of that court’s opinion that the Department of Corrections, in exercising the discretion granted to it under the provisions of Act No. 182, followed an opinion of the attorney general issued in 1976 [164 Informal Op. Atty Gen. 48 (1976)] that held that under Act 182 a qualified prisoner was entitled to only one day of good time for every day served. That opinion incorrectly interpreted the provisions of Act No. 182, as the Court of Criminal Appeals determined.”
546 So.2d at 1004-05 (footnote omitted). Similarly, in Morris v. State, 565 So.2d 288 (Ala.Crim.App.1990), the appellant alleged that credit for his January 1980 sentence was based on one day’s IGT credit for every day served rather than on two days’ IGT credit for every day served. This Court determined that Morris had alleged sufficient facts that, if true, showed that his IGT had been improperly calculated; thus, this Court, following Ex parte Powers, remanded the case for the circuit court to hold an evidentiary hearing on the matter.[2]
Here, too, Carlile has alleged facts that, if true, are sufficient to establish that his IGT may have been improperly calculated. It is clear from the record that Carlile was granted 2 years, 10 months, and 13 days of IGT for the period from August 12, 1983, to June 25,1986. That IGT was calculated at a rate of one day of credit for every one day served and, in its motion to dismiss the petition, DOC did not address Carlile’s claims that that time should have been calculated at a rate of two days of IGT credit for every one day served.[3] Therefore, we must remand this case for the circuit court to hold a hearing on this claim. ■
II.
As to Carlile’s second claim, as set out above, Carlile argues that although he was removed from IGT status in 1986 because of a prison disciplinary, he was returned to IGT status in 1987, and that, therefore; he should have earned IGT for the period from 1987 until he was released on parole on February 6, 1989. Carlile also alleged that he had requested his inmate files so that he could provide documentation supporting his contention that he was returned to IGT status in 1987, but claims that he was told that his records were not available: However, in her affidavit, Teague stated that Carlile had not been in IGT status since his June 25, 1986, disciplinary action.
Thus, DOC refuted Carlile’s claim that he was returned to IGT status in 1987. Therefore, having provided no evidence to the contrary, Carlile is not entitled to any relief bn this claim.
*1014 III.
As to Carlile’s third claim, as set out above, Carlile argues that he was entitled to IGT credit for the time he spent on parole from February 6, 1989, until he was returned to prison on April 16, 2002, for alleged parole violations. Again, as noted in part II of this opinion, in her affidavit Teague stated that Carlile had not been in IGT status since his June 25, 1986, disciplinary action. Thus, DOC refuted Car-lile’s claim.
Moreover, even if Carlile had been on IGT status at the time he was placed on parole, he would not have been entitled to any relief on his claim. Section 14-9-20, Ala.Code 1975, the law that applies to Car-lile, specifically provided that, “[i]n order to encourage prison discipline, commutation of time shall be used as a reward for good behavior at the discretion of the board of corrections.” (Emphasis added.) Further, § 14-9-21, Ala.Code 1975, as set out previously in part I of this opinion, was entitled “Custody classification for inmates ” and allowed for that deduction in the amount “of two days for each one day served.” (Emphasis added.) Similarly, § 14-9-22, Ala.Code 1975, provided that § 14-9-21 was to be used “in order that inmates be given a meaningful incentive for good behavior.” (Emphasis added.) Additionally, § 14-9-23, Ala.Code 1975, dealt with the “allowance of commutation for prisoners serving two or more concurrent sentences” and § 14-9-24, Ala. Code ■1975, dealt with the forfeiture and taking away of commutation “accrued in favor of the prisoner .... ” Finally, § 14-9-25, Ala.Code 1975, provided, in relevant part:
“(a) Any and all commutation of time shall be included and commuted as time served toward parole eligibility.” ■
(Emphasis added.)
The emphasized language in the above-cited Code sections indicates that the provisions of §§ 14-9-20 through 14-9-25 did not, and do not, apply to persons while out of prison on parole, regardless of whether they were otherwise eligible under those statutes. We have found no authority to the contrary, and Carlile has not cited any in support of his contention.[4]
For these reasons, Carlile is not entitled to any relief on this claim.
IV.
Based on the foregoing, we remand this case for the circuit court to hold an eviden-tiary hearing to determine whether, for the period from August 12, 1983, to June 25, 1986, Carlile was credited with one day of IGT for every day served based on a conscious decision by DOC to give Carlile only one day of IGT or whether that credit was derived from an incorrect interpretation of § 14-9-21, based on DOC’s incorrect reliance on the opinion of the attorney general referenced in Ex parte Powers, supra.
In the event that the circuit court determines that DOC credited Carlile with one day of IGT for each day served based on an improper reliance on the opinion of the attorney general referenced in Ex parte Powers, supra, then the circuit court should instruct DOC to exercise its discretion and reconsider the amount of IGT credit to which Carlile is entitled for the *1015 period from August 12, 1983, to June 25, 1986. Nothing in this opinion should be construed as foreclosing the possibility that Carlile’s IGT may have been properly applied at a rate of one day of IGT for every one day served. See Archie v. State, 711 So.2d 477, 480 (Ala.Crim.App.1995)(opinion on return to remand)(“[N]either of the Powers opinions requires the Department to give two days of IGT for each day served. The Supreme Court in Ex parte Powers remanded simply for the Department to exercise its discretion, disregarding ... the erroneous attorney general’s opinion.”). From the plain language of §§ 14-9-20 though 14-9-25, it is clear that while Carlile may earn IGT if he meets the requirements, the dispensation of IGT is entirely at the discretion of DOC. However, that discretion should be founded on correct statutory interpretations. See Ex parte Powers, supra.
The circuit court shall issue specific written findings of fact regarding these issues. Due return shall be filed with this Court within 49 days of the date of this opinion. The return to remand shall include a transcript of the proceedings on remand, the circuit court’s written findings, and anything else that the circuit court believes will aid this Court in reviewing these issues.
REMANDED WITH DIRECTIONS. 
McMILLAN, P.J., and COBB, J., concur. BASCHAB, J., concurs in part and dissents in part, with opinion, which WISE, J., joins.

. Carlile was actually sentenced to a total of 72 years for his convictions; however, his 20-year sentence for one of the robbery convictions was ordered to run concurrently with the 15-year sentence for another of the robbery convictions.

. In Morris, this Court stated:
"We find that appellant has alleged facts that, if true, are sufficient to establish that his IGT prior to his parole revocation was improperly compiled. Although appellant included a copy of a prison department computer printout concerning his release date, this court cannot tell from it whether he has in fact received the proper amount of good time due him. Mead v. State, 475 So.2d 645 (Ala.Cr.App.1985). Since the rest of the record sheds no further light upon the method of appellant’s pre-parole IGT compilation, we deem it necessary that a hearing by the trial court be held to determine whether it was properly compiled under the standards of Ex parte Powers, supra.”
565 So.2d at 289.

. ' We note that the time frame in which Car-lile earned this IGT concluded before Powers v. State, Ex parte Powers, and Morris v. State were decided. ■

. We note that § 14-9-42, Ala.Code 1975, as amended in 1996, provides that "[a] deduction from a sentence provided for by this articLe [Article 3' — 'Deductions from Sentences of Correctional Incentive Time'] shall be allowed for any time period served on parole.” However, § 14-9-43 specifically ex-eludes the application of the provisions of Article 3 to prisoners serving time before May 19, 1980, or persons who committed an offense before May 19, 1980, i.e., persons, such as Carlile, who would fall under the auspices of Article 2— §§ 14-9-20 through 14-9-25.